IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN C. DRIELAK,<br>4603 Brentwood Lane<br>Ellicott City MD 21042<br><br>    Plaintiff,<br><br> v.<br><br>REGINA A. MCCARTHY, Administrator,<br>ENVIRONMENTAL PROTECTION AGENCY,<br>1200 Pennsylvania Avenue, N.W.,<br>Washington, DC 20460<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Steven C. Drielak, by way of his attorney, Morris E. Fischer, Esq., hereby states the following complaint, on information and belief formed after reasonable inquiry under the circumstances, against Defendant:

### PARTIES

1. Plaintiff, Steven C. Drielak, is an individual citizen and resident of Howard County, Maryland.

2. Defendant, Regina A. McCarthy, in her official capacity as Administrator of the U.S. Environmental Protection Agency, Washington, DC 20460.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., 42 U.S.C. § 2000(e) et. seq. and the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq.

4. At all times relevant to this case, Defendant has been an "employer" as defined by 42 U.S.C. § 2000e(b).

5. Venue is vested in this Court, since the facts giving rise to this case took place in the District of Columbia.

## FACTS

### A. Plaintiff's background

6. Plaintiff's birth date is March 21, 1953.

7. Plaintiff's work history from 1975 to 2003 includes: Senior Detective Investigator, Investigations Bureau, New York County District Attorney's Office; Detective Investigator, Special Investigations Unit, Suffolk County District Attorney's Office; Commanding Officer, Detective Lieutenant, Environmental Crime Unit, Suffolk County District Attorney's Office; Senior Analyst and Consultant, Environmental Enforcement and Counter Terrorism, for private firms.

8. Plaintiff has received continuous and extensive training throughout his career in the following areas: Organized Crime; Water Security Training; Nuclear weapons and weapons grade nuclear materials; Explosives and Improvised Explosive Devices; Handling of Radiological Material; Weapons of Mass Destruction: First Responders; Technology for Terrorism: Prevention and Response; Advanced Environmental Crimes; Radiological Response Team Training; Hazardous Material Response; and Internal Affairs Investigations.

9. Plaintiff possesses the following teaching experience: EPA National Academy Instructor, Hot Zone Forensics & Investigative Techniques; EPA Advanced Environmental Crimes Training Program; Guest Lecturer, Hot Zone Forensic

Evidence Gathering, International Association of Chiefs of Police, National Convention; Lecturer, Hot Zone Forensic Evidence Gathering, Suffolk County District Attorney's Office; Lecturer, Weapons of Mass Destruction: The Law Enforcement Role, Brookhaven National Laboratory; Lecturer, Environmental Crime: Investigative Techniques, New York State Prosecutors Institute; Lecturer, Criminal Environmental Investigations, National District Attorney's Association, American Prosecutors Research Institute; Guest Lecturer, Investigative Techniques, United States Department of Justice, Environmental Crimes Section.

**B. Plaintiff's employment with Defendant**

10. In April 2003, Plaintiff began employment with Defendant as a Law Enforcement Specialist.

11. In September 2005, Plaintiff was promoted to Director, Office of Enforcement and Compliance Assurance (OECA) Office of Criminal Enforcement, Forensics and Training (OCEFT), Homeland Security Program.

12. In October 2010, Plaintiff's position was unilaterally changed to Director, OECA, OCEFT, Field Operations Program.

13. From 2003 through 2012, Plaintiff received high ratings on his performance appraisals.

14. In August 2011, Henry Barnet became OCEFT Director and Plaintiff's second-level supervisor.

15. In January 2012, Matthew Morrison became OCEFT Deputy Director and Plaintiff's first-level supervisor.

## C. Incidents

16. In March 2010, Plaintiff was not selected as OCEFT acting Deputy Director.

17. Instead, a younger, less qualified person compared to Plaintiff was selected.

18. In June 2010, Plaintiff was not selected as OCEFT acting Deputy Director.

19. Instead, a younger, less qualified person compared to Plaintiff was selected.

20. In January 2011, Plaintiff was not selected as OCEFT acting Deputy Director.

21. Instead, a younger, less qualified person compared to Plaintiff was selected.

22. In April 2011, Plaintiff was not selected as OCEFT acting Deputy Director.

23. Instead, a younger, less qualified person compared to Plaintiff was selected.

24. In September 2011, Plaintiff was not selected as OCEFT acting Deputy Director.

25. Instead, a younger, less qualified person compared to Plaintiff was selected.

26. On or around August 7, 2012, Henry Barnet signed a Memorandum of Understanding (MOU) between OCEFT and the Administrator's Office of Homeland Security proposing to alter Protection Services Detail work, a component of Plaintiff's national program manager duties.

27. Although Plaintiff was the national program manager for the Protection Services Detail (PSD) and his yearly performance evaluation is partially based upon the PSD's proper management, Plaintiff was excluded from all meetings and discussions regarding this MOU.

28. Younger subordinates of Plaintiff were included in discussions of the MOU.

29. The MOU would increase a younger subordinate's duties, while decreasing Plaintiff's duties.

30. The MOU proposed reassigning Plaintiff's duties to managers younger than Plaintiff.

31. On or around September 20, 2012, Plaintiff was informed that Morrison proposed to move Protection Services Detail to the Office of the Inspector General, which would transfer a portion of Plaintiff's national program manager duties.

32. Management did not consult with Plaintiff regarding the proposed move.

33. Management consulted with younger subordinates of Plaintiff regarding the proposed move.

34. Plaintiff was the national program manager for the Protection Services Detail which comprised approximately 50% of the Field Operations Program personnel and budget requirements.

35. Removal of this program from Plaintiff's management oversight would result in an approximate 50% reduction in Plaintiff's personnel and budgetary allocation.

36. On or around September 9, 2012, Plaintiff learned that Barnet proposed to rename the National Criminal Enforcement Response Team (NCERT) where Plaintiff is the national program manager, to the "National Criminal Evidence Recovery Team" and remove a large portion of NCERT's current duties and responsibilities.

37. Younger subordinates of Plaintiff were informed of the proposals well before Plaintiff found out.

38. A younger subordinate of Plaintiff's informed Plaintiff about the proposals.

39. Plaintiff's younger subordinate was told by Plaintiff's supervisor Morrison not to share the proposals with Plaintiff.

40. Plaintiff was excluded from all emails, meetings and discussions regarding the proposals.

41. In August 2012, Barnet extended the detail of the selectee who was chosen as acting Director of the Criminal Investigation Division (CID), precluding Plaintiff from holding the position.

42. Plaintiff was more qualified than the selectee in that Plaintiff had more criminal environmental experience, was a higher level manager within the OCEFT (selectee was Plaintiff's deputy), and had only positive evaluations.

43. On or around August 30, 2012, Morrison and Barnet denied Plaintiff the assignment of developing a briefing paper for OECA Administrator Cynthia Giles regarding the emergency response and force protection functions of NCERT.

44. This was an assignment regarding the national program that Plaintiff was solely responsible for, yet it was assigned to Plaintiff's younger subordinate without Plaintiff's knowledge.

45. This incident further isolated Plaintiff from decisions affecting his national program responsibilities thereby limiting his ability to be an effective OCEFT senior manager.

46. On or around August 8, 2012, Morrison informed Plaintiff that managers were drafting an organizational chart showing the Director position eliminated and the senior manager as a Branch Chief or Special Agent in Charge in the Field Operations Program.

47. On or around August 8, 2012, Morrison sent an email indicating that NCERT, where Plaintiff is national program manager, was being moved to the National

Environmental Investigations Center, which Plaintiff believed was without the approval of human resources and would result in Plaintiff losing his Director position.

48. Morrison only asked for Plaintiff's input regarding NCERT after Plaintiff informed Barnet that he had filed a complaint with an EEO counselor.

49. Plaintiff should have received the entire assignment dealing with the developing of a briefing paper for OECA Administrator Cynthia Giles regarding the emergency response and force protection functions of NCERT the moving of NCERT.

50. In July 2012, Barnet and Morrison did not make Plaintiff aware of a meeting with CID management that involved NCERT, where Plaintiff is the national program manager, and did not brief Plaintiff on what discussions took place.

51. Plaintiff was always invited to these meetings prior to July 2012.

52. Plaintiff's younger colleagues were invited to these discussions.

53. On or around June 11, 2012, Morrison did not make Plaintiff aware of a national program meeting for NCERT and the Office of Solid Waste and Emergency Response and did not brief Plaintiff on discussions regarding the NCERT program.

54. Morrison took a younger subordinate of Plaintiff's to the meeting.

55. On November 5th, 2011, Plaintiff was placed on the "Best Qualified" list for the permanent SES position of OCEFT's CID Director, which was an SES promotional position.

56. Barnet denied Plaintiff an interview for the permanent SES position of OCEFT's CID Director.

57. Numerous younger and less qualified candidates within OCEFT were granted interviews for the permanent SES position of OCEFT's CID Director.

58. In May 2012, the Director of CID position was announced again but Plaintiff did not apply because Barnet made it clear that Plaintiff had no potential advancement in OCEFT.

59. In January 2012, Barnet did not select Plaintiff as acting Director of CID.

60. The selectee for acting Director of CID in January 2012 had only 18 months of experience as a law enforcement senior manager.

61. The selectee for acting Director of CID in January 2012 had no EPA Division level management experience.

62. The selectee for acting Director of CID in January 2012 was much younger and less qualified than Plaintiff to fill an acting Division Director position.

63. In April 2012, Barnet did not select Plaintiff as acting Director of CID.

64. The selectee for acting Director of CID in April 2012 was Plaintiff's subordinate and was much younger and less qualified than Plaintiff.

65. The selectee for acting Director of CID in April 2012 had never served as a Division Director in OCEFT.

66. On or around October 31, 2011, Barnet gave Plaintiff an overall performance rating lower than Plaintiff deserved.

67. Plaintiff applied for jobs at other government agencies and included the October 31, 2011 performance evaluation in his application and was not selected for any jobs.

## COUNT I
## DISCRIMINATION BASED ON AGE

Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

68. This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq., for employment discrimination on the basis of age.

69. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of his employment.

70. Other similarly situated employees not of Plaintiff's age group were not subject to the same conditions of employment as Plaintiff.

71. A causal connection exists between Defendant's actions toward Plaintiff and Plaintiff's age.

72. Defendant's aforementioned conduct and statements reflect directly on a discriminatory attitude toward Plaintiff.

73. Defendant's actions constituted a violation Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff demands:

A.  In the first cause of action, judgment against Defendant in the amount of $1,000,000.00.

B.  All other relief that the Court deems appropriate.


Respectfully Submitted,

_____  06/27/2014
Morris E. Fischer, Esq.
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff

## JURY DEMAND

Plaintiff herein demands a jury for all issues to be tried in this case.

                                               Respectfully Submitted,

                                       _/s/ Morris E. Fischer_       6/27/2014

                                       Morris E. Fischer, Esq.
                                       1400 Spring Street
                                       Suite 350
                                       Silver Spring, MD 20910
                                       (301) 328-7631 phone
                                       (301) 328-7638 fax
                                        Attorney for Plaintiff